## MANN v. PALMER.

### December, 1865.

The owner of lands made an agreement with the plaintiff to convey the lands to plaintiff, who agreed to pay off incumbrances, to make advances, &c., and to sell the lands from time to time, during the term of three years, the proceeds to be divided between the parties. The plaintiff subsequently agreed with the defendant to convey the lands to him, the defendant agreeing to make the required advances, and to sell off the lands, and to pay to the original owner his share of the proceeds. *Held,* that the expiration of three years, and the settlement of a suit between a committee subsequently appointed of the estate of the owner and the parties to this action, brought for the purpose of setting aside the original contract, amounted, under the circumstances, to a complete abandonment of the contract and a termination of the agencies.

The statute of limitations, though not pleaded, is available as a bar to an off-set interposed by a defendant which is not a counter-claim within the definition of the Code.

Acquiescence in the rescission of an executory contract is not necessarily a waiver of an existing claim for profits already made under it.

Abijah Mann, Jr., brought this action, in the supreme court, against George Palmer (for whom, on his death pending the action, Everard Palmer, administrator, was substituted as defendant), for an accounting in respect to money alleged to have been received by defendant under contracts relative to an adventure in the sale of lands.

The facts material to this appeal were, that on November 21, 1851, one Lockwood agreed, under seal, with the plaintiff, to convey to plaintiff certain lands subject to his wife's dower and to assign an award of damages for land taken by a railroad company, in consideration of which plaintiff agreed to pay off liens on the property and cause the property to be sold within three years, and, after deducting his advances, to pay to Lockwood one-half the net proceeds. Pursuant to this agreement Lockwood conveyed the lands to Mann, the plaintiff. On November 22, Mann entered into an agreement with Palmer, the defendant, reciting the agreement with Lockwood, and agreeing that Mann should convey the premises to Palmer, and

Palmer should perform the agreement and pay over half the net proceeds to Lockwood.

On the same day the defendant Palmer made an agreement with William W. Mann, giving him the management, sale and disposition of the premises, and agreeing to pay him, for his services therein, one-half the net proceeds remaining after paying Lockwood, the original owner, his share; it being further provided that Palmer should advance all moneys which he might deem expedient and necessary for the purchase and preservation of the property and for the perfection and security of the title thereto.

Under these agreements some lands were sold and moneys were received by William W. Mann.

Subsequently to the making of this contract, Lockwood was adjudged an habitual drunkard; and one Stevens was appointed a committee of his estate. In July, 1853, Stevens brought an action against Abijah Mann (the plaintiff in this action), Palmer and others, to restrain the further sale of the lands, and to annul the contract on the ground of fraud, &c. That action was compromised in 1856 with the approval of the court upon the terms stated in the opinion of DENIO, J., and thereafter no further sales were made.

In the present action the plaintiff sought to recover some eleven thousand dollars paid on the settlement of the suit brought by Lockwood's committee and the conveyance to Wm. W. Mann, and the taxes and assessments since paid.

*The referee* found that the original contracts were canceled by the new arrangement with Wm. W. Mann, and that plaintiff could not recover the sums paid on the settlement of the suit by the committee, nor subsequent payments; but that he could recover the balance of proceeds of sales prior thereto, and interest.

Other details sufficiently appear in the opinion. Both parties appealed from the judgment.

*Abijah Mann, Jr.*, plaintiff, in person.

*Wm. H. Green*, for defendant, appellant, respondent.

DENIO, Ch. J.—The most important question as regards the amount, arises upon the claim of the plaintiff to be allowed the sum of eleven thousand seven hundred dollars paid by W. W. Mann, to the committee of Daniel Lockwood, for the purchase of the remaining interest of Lockwood and his wife in the land. The plaintiff claims to be entitled to this by virtue of his contract with Palmer, or the assignment of W. W. Mann to him of June 3, 1861. This assignment professes to transfer the agreement which had been entered into between George Palmer, the defendant's intestate, and W. W. Mann, and all rights of action which might be had under it. One inquiry is whether W. W. Mann had any right of action against Palmer under that agreement. The interest, which was the subject of the agreement between those parties, was the rights acquired by Palmer under his contract with the plaintiff, in the remaining land of Lockwood, incumbered by mortgages and tax liens, and subject to his wife's inchoate right of dower. The stipulations of the parties were that W. W. Mann should take charge of the sales of the land, under the direction of Palmer, and that the one-half of the net proceeds of the sales, which would have been the share of Palmer but for the agreement with W. W. Mann, should be equally divided between him and said Mann Palmer was to make advances, in his discretion, for the purchase and preservation of the property, and for the security of the title. The right and duty of the plaintiff under the original contract, to make sales of the lands, was limited to three years from November 21, 1851. After that time had passed, with the bulk of the land remaining unsold, the agreement, so far as it looked to sales for the final account of the plaintiff, and those having interest under him of one part, and Lockwood of the other part, had expired. It would, no doubt, result from this that the plaintiff would afterwards hold the legal title of the land as a lien for his advances made under the agreement, over and above what he or his assignees, Palmer and W. W. Mann, had received. The substance of the original agreement was the creation of an agency by Lockwood, for the sale of his lands; and for the plaintiff's services in making the sales, and the advance of his money and credit to manage the liens and incumbrances, he was to have half the net proceeds

of the sales. But the agency was not perpetual as to time, but was limited to three years from the time of making the agreement; that limitation extended equally to Palmer, under his contract with the plaintiff, and to W. W. Mann under his agreement with Palmer. They were all based on the first contract.

In September, 1855, after the limitation had expired, the validity of the arrangement between Lockwood and the plaintiff, and of course of all the derivative contracts connected with and depending on that arrangement, were challenged by Stevens, claiming to represent the interest of Lockwood, as his committee, on the ground of want of mental capacity of Lockwood to affect his property by his contracts and conveyances. All proceedings under the agency were suspended during the pending of that suit, and it had, moreover, ceased to be operative by the efflux of time. Stevens, by his suit, sought to annul and have declared void all the transactions of the plaintiff, Palmer, and W. W. Mann, and to have paid to him all the money which they or either of them had received as the fruit of these transactions, except that he elected to affirm certain sales of portions of the land which had been made to certain railroad companies.

This suit was settled between the parties to it by stipulations entered into on March 1, 1856, and the settlement was afterward confirmed and made the judgment of the court. The terms of the settlement were the following: *First*, the defendants were to pay the plaintiff's costs, liquidated at the gross sum of seven hundred dollars. *Second*, they were to release to Daniel Lockwood all their claims against him or his estate which they had at the date of the agreement or had acquired since. This put an end to the title acquired by the deed of Lockwood to the plaintiff, and to all the stipulations of the contract for the sale of these lands. It completely annulled the agency, out of which all the transactions respecting the land arose. *Third*, a deed of release was to be executed to W. W. Mann of all of Lockwood's title and estate in the lands, and his wife was to release to him her right of dower; and, *Fourth*, the plaintiff was to be released from all demands.

These several stipulations, it is understood, were all per-

formed by the respective parties. It appears to me perfectly clear that the subordinate agency created by the contract between the plaintiff and George Palmer, and upon which this action is based, was completely subverted and broken up by this adjustment. The plaintiff had ceased to hold any title, nominal or otherwise, in the premises. He could no longer convey title to any parcels which should be sold under the agency of Palmer or the subordinate agency of W. W. Mann. There was no longer any subject to feed and support these agencies. There was no longer any portion of net profits to be paid to Lockwood, or to be divided between Palmer and W W. Mann. That person could not any longer hold a subordinate agency under Palmer, for he had, by the assent of all the parties, and by a judgment of a competent court, become the owner of the whole estate. It is preposterous to consider this agreement as a purchase of W. W. Mann, for the purpose of perfecting the title which Lockwood had conveyed to the plaintiff, and a measure subsidiary to the sale of the lands under the original arrangement. It dislocated that arrangement in every part, and rendered it impossible that it should be further pursued, even if the expiration of the three years had not terminated the agency, which was its principal object. There is, therefore, no reasonable ground for a recovery by the plaintiff of the whole or any part of the eleven thousand dollars paid to the committee of Lockwood. These views, if correct, dispose of the plaintiff's appeal. Upon the appeal of the defendant, I have felt more difficulty.

Palmer, the defendant's intestate, had received four thousand dollars while the agency was in active operation. This sum and the interest, after deducting certain sums paid by him, he is charged with, and no allowance is made to him for services, or for any interest he would have had under the contract with the plaintiff. By the two contracts, the one with the plaintiff and that with W. W. Mann, the net proceeds of lands sold were to be divided in the proportion of one-half to Lockwood, one-fourth to Palmer, and one-fourth to W. W. Mann. Such, it is conceded, would have been the right of the parties to this money if the contract had been fully executed. But it was executed only in part, and it was then suspended by the ex-

piration of the three years, and was finally annulled by the settlement. Why should not the rights of the parties (except Lockwood) be adjusted between themselves on the footing of their contracts? It is true that the complaint, in the suit brought by Stevens, claimed all the moneys which had been received by any of the parties under the professed agency. But the settlement and judgment did not provide for the payment of these moneys to Stevens, as the representative of Lockwood. Whether they, or either of them, entered into the consideration of the purchase, by W. W. Mann, of Lockwood's remaining interest, we cannot say. Probably the other sum which W. W. Mann had received did. He was the purchaser of that interest, and it is fair to suppose that the money remaining in his hands as the proceeds of a parcel of land sold to the other railroad company went to reduce the amount which he would otherwise have been required to pay. But Palmer took no interest under the conveyance made to W. W. Mann, and I see no reason to suppose that the money in his hands, or at least the portion of it which he was entitled to, entered into the price which was paid. The settlement was the result of a compromise. No one can say which of its terms was considered the compensation for the other. Mr. Stevens abandoned the pursuit of the money, and, instead of persisting in a reconveyance of the remaining land, he conveyed it to W. W. Mann, and he, as committee of Lockwood, received a gross sum of money in full of his claims, and for the price of the land.

The compromise agreement, *prima facie,* and so far as we can discover, left this sum of four thousand dollars in Palmer's hands. So far as all except the one-fourth is concerned, it may be said that the plaintiff, by force of the release from the committee and the assignment from W. W. Mann, represents it and is entitled to receive it. But I do not see what right he has to the one-fourth which Palmer was entitled under his contract to retain.

There is another view, leading to the same result. If the conveyance to the plaintiff from, and his agreement with, Lockwood were invalid on the ground of want of disposing capacity in the latter, that infirmity was not the fault of Palmer. The plaintiff must be taken to have represented to him that he had

a valid conveyance and agreement; and he invited him to go on and make sales and retain one-half of the net proceeds, a moiety of his half Palmer relinquished to W. W. Mann, in consideration of his services. The plaintiff now seeks to recover back, and he has recovered, this one-fourth which, under these agreements, Palmer was to keep, and he makes title to it under an arrangement by which the conveyance from Lockwood and the agreement with him are rescinded. It seems to me that he ought to be estopped from claiming that which he had agreed Palmer should have, and which he would have been clearly entitled to if the representations made to Palmer had been accurate. Hence, I am of the opinion that this one-fourth, and the interest on it, should be deducted from the recovery.

I think the referee was right in disallowing the note of W. W. Mann. It was wholly unconnected with the subject of the land, and the plaintiff was never liable for it. Moreover, it was barred by the statute of limitations.

I am of opinion that the judgment should be reversed on the defendant's appeal, unless the plaintiff will remit the part of the amount represented by the one-fourth part of the four thousand dollars, which has been allowed to him.

DAVIS, J.—The plaintiff seeks to recover the eleven thousand dollars paid on the settlement of the suit brought by the committee of Lockwood, and on the conveyance of the lands to Wm. W. Mann, and the taxes and assessments since paid, on the ground that, by the contract between Palmer and Wm. W. Mann, the former was bound to advance all moneys which he, said Palmer, should deem expedient and necessary for the purchase and preservation of said property, and for the perfection and security of the title thereof. But the referee has found, as a matter of fact, that it was intended and understood that the several contracts between plaintiff and Lockwood, and plaintiff and Palmer, and Palmer and Wm. W. Mann, should be canceled by the new arrangement, under which Wm. W. Mann took the entire title to the lands in question, and that the original enterprise or speculation was thereby abandoned. I think this finding was sustained by the evidence, and by the subsequent conduct of the parties, which seems to have been

wholly inconsistent with the idea that Palmer was thought to be liable to advance or pay that sum. If that purchase had been under his contract with Wm. W. Mann it is not a little strange that he should not have been called upon to have paid or secured it to Stevens, the committee, at the time, or at least advised, in some way, that it was the intention to hold him responsible for it, and it is more singular that, if he were to pay the eleven thousand dollars, because he deemed it necessary and expedient that the interests of Lockwood and the dower right of his wife should be bought in, that he should have suffered the entire title of the estate to have passed into the hands of Wm. W. Mann, and beyond the operation and control of his contract with Abijah Mann, and with no new arrangement that would protect and secure his very much enlarged and extensive interests in the property.

The circumstances of the arrangement were such, that it would require pretty strong proof to convince the mind that it was not intended and understooood just as the referee has found.

It was a new subject matter with which the parties were dealing, and not that described in and affected by the then existing contracts. The contracts of Palmer related only to the interest in the land acquired by plaintiff under his contract and deed with and from Lockwood. It was to protect that interest that Palmer covenanted to make such advances as his own judgment should deem expedient. But that interest, and the manner in which it was to be carried out and made profitable, were effectually terminated by the new arrangement. Palmer would have had no right, under his contract with Wm. W. Mann, to have paid this sum of eleven thousand dollars and charged it as advances under that contract. Nor could he have taken the whole title himself, or placed it in another, by any such payment, without thwarting the entire scheme or arrangement of the several contracts.

I think the finding of the referee on this subject was just and equitable, and abundantly sustained by all the facts and circumstances of the case, and this fully disposes of the plaintiff's appeal.

Two questions are raised on the defendant's appeal. First,

whether the note of one thousand five hundred dollars given by Wm. W. Mann to Palmer should have been allowed as an offset against plaintiff's claims. The referee rejected it, on the ground that it was barred by the statute of limitations. The plaintiff had not pleaded the statute in reply. But, as this note was not a counter-claim, within the Code, no reply was necessary. It was a demand against a third party, the plaintiff's assignor, and not against the plaintiff, and it did not grow out of the transactions out of which this suit arose, so that it was connected with the subject matter of the action, or the accounts between the parties, in any sense. It was, as the referee found, a demand for money lent, quite outside of the land transactions, and no judgment could have been rendered upon it against the plaintiff. The Code, section 150, defines a counter-claim as a demand existing in favor of a defendant, and against a plaintiff, between whom a several judgment might be had in the action, and a reply is not necessary where the alleged offset is not within this ·definition. The referee was, therefore, right in holding that the statute of limitations was a bar to any right of action on. this note.

The second question on defendant's appeal arises upon the recovery by plaintiff of the entire balance in Palmer's hands of the proceeds of lands sold to the railroad company before the bringing of the suit by Lockwood's committee. It appears, from the opinion of the general term, that on the first trial of this case the referee allowed to Palmer one-fourth of the proceeds of the lands so sold, over and above the advances made. The general term ordered a new trial for this supposed error, unless the defendant would stipulate to increase the judgment against him by adding to it the one-fourth for which Palmer had been credited. Declining to make the stipulation, the case went again to trial. The present judgment was given in accordance with the decision of the general term.

It will be seen that the question is whether, under all the circumstances, Palmer was equitably entitled to retain his proportionate share of the profits, so far as the original arrangement had been carried out before the intervention of the suit by Stevens. The decision of this question by the general term goes upon the idea that, by the new arrangement made on the

settlement of the suit, the original contracts were wholly re-scinded and the parties remitted to their relations to the prop-erty as they existed before any contracts were made. That W. W. Mann, and afterwards plaintiff, succeeded to all the rights of Lockwood, and is entitled to every thing that Stevens could have claimed if, as committee, he had succeeded in the suit and set aside the whole of the transactions for the alleged fraud in dealing with an incompetent party; or that Lockwood could have claimed upon a mutual agreement of rescission which should have remanded all the parties to their original rights.

But the referee has not found that such was the intention or understanding. His finding is, that the contracts should be canceled, and that the enterprise or speculation, set on foot by the agreement between plaintiff and Lockwood, should be abandoned, and that they should account among themselves for the money that, in the prosecution thereof, had been received, advanced or expended by them, respectively, under said agree-ments prior to said said settlements of said action. It is to be noted in this connection, though not perhaps very material, that but one-half of the proceeds of the lands sold to the rail-road companies was demanded by the suit, from which it would seem that the committee designed to ratify the contract so far as it had been executed in those particular instances. I do not see, either in the findings of the referee or the evidence, any thing satisfactorily to show that, by canceling the contracts and abandoning the enterprise, Palmer either agreed or understood that he was to pay over to any person the portion of the pro-ceeds to which he was entitled under his agreements with the Manns. Why should he have done so? He was acting in good faith, and, so far as anything indicates, had gone on in good faith to execute the contracts which he had made with them. It was no fault of his that Lockwood's committee came in with a suit which, if well founded, would have established that the plaintiff had made a contract with him which he could not perform. If the committee had succeeded, and thereby compelled Palmer to have accounted and paid over every thing in his hands and lost the profits made and contemplated, would Palmer have had no rights or remedy under his contract with

plaintiff? The failure to carry out the agreement would have been, in such case, no breach of the agreement on Palmer's part, but the failure of plaintiff's title, for the reasons alleged in the complaint of the committee, would have been a breach, it seems to me, on his part, for which Palmer would have had some remedy. His mere consent and acquiescence in an arrangement by which the contracts were canceled, would doubtless have operated to extinguish any claim on his part for future or contingent profits; but would it operate, as between himself and the Manns, to compel him also to lose his interest in the profits already made? It strikes me as neither just nor equitable that these consequences should follow, because Palmer appears to have been, all the way through, an innocent party, acting in good faith, who has lost an apparently valuable contract by the default of the party who had entered into it with him. If Palmer had been out of pocket by reason of his advances, there seems to me to have been nothing in the settlement that should have prevented his calling upon the plaintiff to reimburse him, after the plaintiff's necessity of settling the suit had involved a breach of his contract with Palmer. The same reason would operate to protect him in the enjoyment of his share of realized profits.

On a careful examination, it appears to me the whole case, as between the Manns and Palmer, comes just to this: They have mutually consented, inasmuch as it has become impracticable to carry out the enterprise as it was originally contemplated, to stop it at the point where the settlement of the suit found it; to cancel these several contracts at that point of time; to permit the lands to go in fee in other directions and for other purposes, and to adjust, as between themselves, what had been done, by a mutual accounting of receipts and expenses, and a division of profits, if any, according to the contracts. This would leave William W. Mann, who had become for this purpose the assignee of Lockwood, entitled to receive three-fourths of the net proceeds, to wit: one-half for Lockwood's share, one-fourth for his own, and Palmer to receive the other fourth, as the part he was entitled to under his agreement with William W. Mann. As assignee of William W. Mann, the plaintiff has succeeded to just these equities, and

in accordance therewith the accounts should have been settled. This, I believe, would carry the case back to the original judgment rendered by the referee, or, if not, it is upon the present accounting easily attainable upon the figures produced before the referee.

On the defendant's appeal the judgment should be reversed and a new trial ordered, unless the plaintiff stipulate to make the necessary deductions to conform his judgment to the views above expressed, in which case judgment should be affirmed.

On the plaintiff's appeal the judgment should be affirmed.

All the judges concurred.

Judgment on plaintiff's appeal affirmed, with costs, and on defendant's appeal, reversed, unless plaintiff elects to make deduction, in which case it is affirmed.